UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                :

JOSE TAVAREZ,                       :

             Petitioner,      :     **MEMORANDUM DECISION AND**

                            :     **ORDER**

      - against -         :

                            :     12 Civ. 4015 (BMC)

ROLAND LARKIN, Superintendent,   :

                            :

           Respondent.      :

                            :

-------------------------------------------------------- X

       Petitioner brings this proceeding for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, after a jury convicted him of manslaughter in the first degree and criminal possession of a

weapon in the second degree. Petitioner was sentenced to concurrent prison terms of fifteen

years on each count, followed by five years of post-release supervision. For the reasons that

follow, the petition is denied.

## BACKGROUND

       Petitioner fatally shot his girlfriend, Liliana Alvarez, in the head at close range in her

bedroom. After the shooting, petitioner awoke the victim's parents and told them to call 911.

Petitioner then fled to the Dominican Republic, where he was arrested by Dominican authorities,

and then transported back to New York and charged with intentional murder in the second

degree. In a post-arrest statement, petitioner explained to police that he had purchased the gun

for protection, and that it had discharged by accident when the victim grabbed at him during an

argument.

       The instant petition relies primarily on two ambiguities in the trial transcript. The first

arose at the charge conference. After the court granted defense counsel's request for a charge of

criminally negligent homicide, N.Y. Penal Law § 125.10, the prosecutor requested that the trial

court also submit first-degree manslaughter, N.Y. Penal Law § 125.20, and second-degree

manslaughter, N.Y. Penal Law § 125.15.  As relevant here, first-degree manslaughter requires a

showing that the defendant's intent was to cause "serious physical injury," rather than to kill.

N.Y. Penal Law § 125.20(1).  The court granted the prosecutor's application, and stated that it

would charge both levels of manslaughter and criminally negligent homicide, in addition to

intentional murder.

At this point, the following colloquy occurred between defense counsel and the trial

court:

> [Defense Counsel]: So the record is clear, Judge, I do not necessarily agree with
> the position of the Court.  There is a reasonable view of the evidence which would
> support Man 1 and Man 2.  The court concluded as a consequence of Mrs.
> Pomodore --
> THE COURT: Tell me why it shouldn't.

Defense counsel proceeded to argue that for second-degree manslaughter, petitioner must have

been "aware of that risk" and "consciously disregard it," and that petitioner was not consciously

aware of the risk that the victim would grab for him and the gun would go off.  The court stated

that the jury could consider petitioner's statement and "extract from it what it wants to" and that

"[e]ssentially I will lecture [the jury] on the law of homicide.  I will do it.  It's my job.  I get paid

to do that.  My, we go from Murder 1 to Murder 2 to Man 1 to Criminally [negligent

homicide]."[1]

On direct appeal, appellate counsel argued that the first-degree manslaughter charge

should not have been submitted to the jury as a lesser included offense of the intentional murder

---

[1] The reference to Murder 1 appears to have been in error, as the court ultimately charged the jury on second-degree murder, first-degree manslaughter, second-degree manslaughter, criminally negligent homicide, and on second-degree criminal possession of a weapon.

count.  According to appellate counsel, "no reasonable view of the evidence" supported a finding

that, if petitioner acted intentionally, he committed the lesser crime of first-degree manslaughter

and not the greater crime second-degree murder.  Counsel contended that because the victim was

shot in the head at close range, if petitioner fired the gun intentionally, he could not have

intended only to cause serious injury and not death.

Appellate counsel further argued that the portion of the transcript excerpted above

contained an error: by omitting a word or emphasis, the transcript erroneously reported that

defense counsel had conceded that a reasonable view of the evidence supported a charge of first-

degree manslaughter, when actually he had argued to the contrary.  The difference is of course

significant in terms of whether trial counsel waived or preserved the point of error.  Appellate

counsel did not, however, use the procedures set forth in New York statutes for amending the

transcript of a court proceeding, and instead argued that the Appellate Division should interpret

trial counsel's words in their context.

The Appellate Division ruled that petitioner's "claim that the Supreme Court erred in

submitting manslaughter in the first degree as a lesser-included offense of murder in the second

degree is waived inasmuch as the defendant did not object to the submission of first-degree

manslaughter before the jury retired to deliberate."  People v. Tavarez, 70 A.D.3d 732, 733, 892

N.Y.S.2d 865 (2d Dep't) (citations omitted), leave to app. den., 14 N.Y.3d 845, 901 N.Y.S.2d

151 (2010) (table).  The Appellate Division further held that "[i]n any event, a reasonable view

of the evidence supports a finding that the defendant intended to cause serious physical injury

rather than death."  Id.

Petitioner subsequently brought a *pro se coram nobis* proceeding, arguing that his

appellate lawyer was ineffective for not using the proper procedures to correct the transcript.

The Appellate Division denied petitioner's application, stating summarily that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." People v. Tavarez, 94 A.D.3d 779, 941 N.Y.S.2d 505 (2d Dep't), leave to app. den., 19 N.Y.3d 1001, 951 N.Y.S.2d 478 (2012).

The second ambiguity in the trial transcript occurred when the jury read its verdict. After announcing verdicts of "not guilty" as to second degree murder and "guilty" as to first-degree manslaughter, the clerk asked about the weapon charge. The proceedings were as follows:

> THE CLERK: As to the second count of the indictment, Criminal Possession of a Weapon in the Second Degree, how do you find the defendant?
>
> THE FOREPERSON: Not guilty.
>
> THE CLERK: So that we are clear, I will ask you again, as to the second count of the indictment, Criminal Possession of a Weapon in the Second Degree, how do you find the defendant?
>
> THE FOREPERSON: Not guilty.
>
> THE CLERK: Ladies and gentlemen of the jury, listen to the verdict as it stands recorded, Criminal Possession of a Weapon--
>
> THE COURT: Do you want to go back and fill the rest of the box in? Go back and fill it out.
>
> THE JURORS: Yes.
>
> THE COURT OFFICER: Step out.
>
> (Whereupon, the jury left the courtroom)
>
> (Whereupon, the jury entered the courtroom)
>
> THE CLERK: Let the record reflect the 12 deliberating trial jurors are once again present in the courtroom. Madam Foreperson, as to the second count of the indictment, Criminal Possession of a Weapon in the Second Degree, how do you find the defendant?
>
> THE FOREPERSON: Guilty.

The court then polled the jurors, who unanimously reported that their verdict was not guilty as to second-degree murder, but guilty as to manslaughter in the first degree and guilty as to criminal possession of a weapon in the second degree.

On direct appeal, appellate counsel argued that the conviction on the weapon possession count (and only the conviction on that count) had to be vacated due to this error. His argument was that petitioner was deprived of a fair trial because the trial court was without authority to send the jury back to deliberate after the verdict was announced, in the absence of any indication in the record that the verdict was repugnant or suffered from a legal defect. Appellate counsel further argued that this error was reviewable despite trial counsel's failure to object, because the court's actions in requesting the jury to reconsider its verdict without explanation "represented a significant departure from the organization of the court or the mode of proceedings prescribed by law" and therefore could be reviewed even absent timely objection. Appellate counsel also argued, in the alternative, that if the Appellate Division was inclined to find the claim unpreserved, then it should hold that trial counsel was ineffective for failing to object when the trial court sent the jury back into the jury room. Specifically, the appellate brief stated that:

> Should this Court find that the issue is not a mode of proceedings error, it should find that trial counsel was ineffective for neglecting to preserve the issue by objecting to the court's directive to the jury to reconsider its verdict on the weapon possession count. The failure to so move constituted ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687-96 (1984) … .

In ruling on this issue, the Appellate Division held that "[t]he defendant's remaining contention is not preserved for appellate review and, in any event, is without merit." Tavarez, 70 A.D.3d at 734. [2]

---

[2] Petitioner again raised this ineffective assistance of counsel claim in a § 440 proceeding. The § 440 court wrongly concluded that petitioner had waived his ineffective assistance of counsel claim by not raising it on direct appeal (as shown above, he had raised it). But the § 440 proceeding could not have had any impact on this Court's review of

Petitioner brought this petition *pro se*, identifying denial of effective assistance of both appellate and trial counsel as the grounds for his claims. His petition additionally appears to argue that the trial court deprived him of a fair trial through its conduct regarding the jury's verdict, and that the trial court erred in submitting first-degree manslaughter as a lesser included offense to intentional murder. I instructed the State to address certain issues in response to the petition. I subsequently granted petitioner's motion to appoint counsel, and counsel for petitioner submitted a brief in support of the petition.

## DISCUSSION

### I.    Ineffective Assistance of Appellate Counsel

Petitioner has identified a number of ways in which he claims his appellate attorney failed him – by failing to argue that the conviction for first degree manslaughter was based on legally insufficient evidence, and by failing to raise the issue of trial counsel's ineffectiveness – but petitioner's principal contention is that appellate counsel unjustifiably failed to correct the trial court transcript to properly reflect that trial counsel had objected to charging first degree manslaughter as a lesser-included offense.

The Appellate Division decided this claim on the merits in denying petitioner's *coram nobis* application, and thus my review of that decision attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). That statute provides for habeas corpus relief only if the state court's adjudication of the claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

the issue, as the Appellate Division had already rejected the claim, and thus the § 440 court was bound by the Appellate Division's decision. See N.Y. C.P.L. § 440.10(2)(a). Indeed, the claim was not properly raised before the § 440 court because it was an on-the-record ineffective assistance of counsel claim. See N.Y. C.P.L. § 440.10(2)(b)

Petitioner also argued in his § 440 motion that appellate counsel was ineffective; the § 440 court rejected this argument as properly belonging before the Appellate Division under *coram nobis*.

Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, (2000) (internal quotation marks omitted). Moreover, a state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432 (2005). The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal[.]" Ryan v. Gonzales, —— U.S. ——, 133 S. Ct. 696, 708 (2013).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or," where, as here, the state court summarily disposes of a claim without analysis, what theories "could have supported" the state court's decision. Harrington, 131 S. Ct. at 786. The court then "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

Petitioner only indirectly challenges the application of this deferential standard. Through counsel, petitioner argues that I have the discretion to hold an evidentiary hearing under §

2254(e)(2) because "[n]o State court addressed the merits of [petitioner's] claim that the trial transcript contained an error concerning whether counsel objected to the charge of first-degree manslaughter." Therefore, petitioner argues, I am not barred from holding an evidentiary hearing under Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011), which holds that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Petitioner cites authority for the proposition that Pinholster's limitation on evidentiary hearings "does not apply to federal claims that have not been adjudicated on the merits in state-court proceedings, in which case § 2254(e)(2) is controlling." Han Tak Lee v. Glunt, Superintendent, 667 F.3d 397, 405 (3d Cir. 2012).

This argument fails because petitioner's federal claim for ineffective assistance of appellate counsel *was* decided on the merits by the *coram nobis* court. It is quite clear that, in the context of §§ 2254(d) and (e), the term "claim" refers to the legal claim of constitutional error, and not to "factual claims" in the sense that petitioner contends. Substituting the word "fact" for "claim" in the statute makes this obvious: § 2254(e)(2) would then refer to failure to develop the "factual basis for the [fact]," and § 2254(e)(2)(A)(i) would allow an evidentiary hearing where a habeas applicant could show that "the [fact] relies on . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." This would render the statute nonsensical.[3] Indeed, accepting petitioner's interpretation would render the Supreme Court's holding in Pinholster inapplicable in any case where a habeas petitioner can point to some factual dispute that the State courts did not expressly address in ruling on the merits of a federal claim.

---

[3] This is not to suggest that habeas review is unavailable for factual errors, as it plainly is under § 2254(d)(2). But those factual errors must establish a claim for a constitutional violation.

Simply put, petitioner's "claim" in this habeas petition is that his appellate counsel was ineffective for not correcting the transcript, not that the transcript contains an inaccuracy. Of course, one depends on the other – the transcript error must exist for counsel to have failed to correct it. But the state court adjudicated petitioner's claim for ineffective assistance of counsel on the merits. Therefore, § 2254(d) applies, as does the deferential standard of review under the AEDPA, and I am barred from holding an evidentiary hearing under Pinholster.

But even assuming that I found that appellate counsel was ineffective for failing to correct the transcript – which, considering the deferential standard of review, is unlikely – petitioner cannot show prejudice from this failure. To demonstrate ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984), a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the Strickland prongs. See id. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In the appellate context, a petitioner must establish that there was a reasonable probability that, but for the errors of counsel, his claim would have been successful before the state's highest court. See Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994). Here, the Appellate Division on direct appeal held that "a reasonable view of the evidence supports a finding that the defendant intended to cause serious physical injury rather than death." Tavarez, 70 A.D.3d at 732. Therefore, appellate counsel's failure to properly correct the transcript to reflect trial counsel's objection did not prevent the Appellate Division from reaching the merits of his argument. There is no other way in which this error could prejudice petitioner. There is nothing

9

in the record here to indicate that, even if the trial transcript were properly corrected, either the Appellate Division or the Court of Appeals would have reached a different result.

Petitioner, in his *pro se* submission, additionally argues that his appellate counsel was ineffective for (1) failing to argue that the evidence was legally insufficient to support first-degree manslaughter and (2) failing to argue that trial counsel was ineffective for failing to object to the trial court's actions surrounding the jury verdict. The latter claim is simply inaccurate: as the quotation from petitioner's appellate brief set forth above indicates, appellate counsel did argue, albeit in the alternative, that trial counsel was ineffective for failing to object.

As for the former claim of legal insufficiency as to first degree manslaughter, I would not hold that petitioner was denied the effective assistance of appellate counsel claim even under a *de novo* review, much less the deferential AEDPA standard that applies here. Where the claim of ineffectiveness is that appellate counsel failed to raise non-frivolous arguments, a petitioner "may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533. Here, the appellate attorney filed an affidavit in connection with the *coram nobis* proceeding explaining why he chose to advance the arguments that he did. The attorney stated that the argument that the evidence was legally insufficient to support a conviction for first degree manslaughter was somewhat contradictory with the main argument advanced in petitioner's brief: that no reasonable view of the evidence could support a manslaughter charge because the evidence demonstrated that if petitioner acted intentionally, he acted with intent to kill.

Under New York law, a lesser included charge should be included where the defendant can show (1) that it is theoretically impossible to commit the greater offense without also

committing the lesser; and (2) that a reasonable view of the evidence to support a finding that the defendant committed the lesser offense and not the greater. See People v. Glover, 57 N.Y.2d 61, 63, 453 N.Y.S.2d 660 (1982). Because New York law defines "serious physical injury" as including "physical injury which creates a substantial risk of death," N.Y. Penal Law § 10.00 (10), first-degree manslaughter satisfies the first element as a lesser-included offense to intentional murder, and whether its inclusion is appropriate most often turns on the second element. See, e.g., People v. McNeil, 273 A.D.2d 608, 711 N.Y.S.2d 518 (3d Dep't 2000); People v. Benson, 265 A.D.2d 814, 697 N.Y.S.2d 222 (4th Dep't 1999). It would thus appear at least somewhat anomalous for appellate counsel to have argued that, on the one hand, a reasonable view of the evidence would *only* support a conviction for intentional murder if the petitioner acted intentionally – which requires the conceding that the evidence was legally sufficient to sustain that charge – and on the other, that the evidence was legally insufficient to prove the element of intent as to the lesser included charge.

To be sure, this inconsistency is not an obvious one, and perhaps a legal insufficiency argument could have been advanced in the alternative. But deciding not to advance this argument was a valid tactical choice, especially because it is not at all clear how petitioner could have prevailed on legal insufficiency given that the Appellate Division rejected, on the merits, the argument that no reasonable view of the evidence could support a conviction for first-degree manslaughter. Had appellate counsel argued legal insufficiency, "the state court would have examined the claim through an extremely exacting lens." Lee v. Ricks, 388 F. Supp. 2d 141, 156 (W.D.N.Y. 2005). "Viewing the evidence in a light most favorable to the prosecution and according it the benefit of every favorable inference, a reviewing court must ask whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." Id. (collecting New York cases discussing legal insufficiency). In light of the uphill battle petitioner would have faced on this claim, appellate counsel's decision to forgo it was not unreasonable. Petitioner points out that the legal sufficiency argument was preserved by trial counsel and the reasonable view of the evidence argument arguably was not. Again, however, the Appellate Division reached the merits of petitioner's arguments and thus this distinction does not change the analysis.

The legal sufficiency argument was not "significant and obvious," and the arguments that appellate counsel did pursue were not "clearly and significantly weaker." Mayo, 13 F.3d at 533. Rather, appellate counsel's strategy of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536, 106 S. Ct. 2661 (1986) (internal quotations omitted). The application of the AEDPA standard to the analysis makes it even clearer that federal habeas corpus relief is not available here.

## II. Ineffective Assistance of Trial Counsel

Petitioner additionally contends that he was deprived of the effective assistance of counsel when his trial counsel failed to object to the jury being sent back after announcing a "Not Guilty" verdict as to the weapons charge.

After disposing of petitioner's claim that first-degree manslaughter was erroneously charged, the Appellate Division held that petitioner's "remaining contention is not preserved for appellate review and, in any event, is without merit." Tavarez, 70 A.D.3d at 733. This language could only be referring to petitioner's contention that he was denied a fair trial by the court's actions with respect to the jury verdict, and in the alternative, that his trial counsel was ineffective for failing to object; there was no other claim before the Appellate Division. But the

ineffective assistance of trial counsel claim could not have been procedurally barred, because it was clearly based on the record, and therefore could only be raised in the manner in which it was raised – on direct appeal.  See N.Y. CPL § 440.10(2)(c).  Absent any indication that the Appellate Division rejected petitioner's ineffective assistance of trial counsel claim on an independent state ground – and indeed, it appears that no such State ground existed – I must presume that the State court decided the merits of the federal claim.  See Jimenez v. Walker, 458 F.3d 130 (2d Cir. 2006).

Therefore, because the Appellate Division decided petitioner's ineffective assistance of trial counsel claim on the merits, the deferential AEDPA standard discussed above applies. Given the substantial deference built into the Strickland standard itself, my review under § 2254(d)(1) is "doubly deferential."  See Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411 (2009).  "To prevail, petitioner must show not only that counsel's performance fell below the Strickland standard of reasonableness, but also that the state court's application of the Strickland standard was itself unreasonable and not merely incorrect."  Acevedo v. Capra, No. 13 Civ. 5579, 2014 WL 1236763, at *13 (E.D.N.Y. Mar. 25, 2014) (citing Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 785 (2011)).

Under New York State law, "a verdict reported by the jury is not final unless properly recorded and accepted by the court."  People v. Salemmo, 38 N.Y.2d 357, 379 N.Y.S.2d 809, (1976) (citing N.Y. C.P.L. § 310.80).  However, "[a] trial court may reject an *announced* verdict only under two circumstances: (1) where it is legally defective, e.g., where the jury failed to follow the court's instructions; or (2) where it is repugnant."  People v. Rivera, 15 N.Y.3d 207, 211 n.2, 906 N.Y.S.2d 785 (2010).  Here, although the announced verdict was not necessarily a

final verdict of acquittal until accepted and recorded, the judge did not make any findings in his apparent rejection of the verdict announced by the jury.

I cannot accept the State's argument that the jury was obviously confused and always intended to find petitioner guilty. While that is certainly a possible inference that can be drawn from the record, and perhaps even the most likely one, the fact remains that the transcript contains no express findings that the jury was confused, that it failed to follow the judge's instructions, or that the verdict was repugnant or otherwise legally defective. All the transcript shows is that the jury twice announced a verdict of "Not Guilty," was sent back for an indeterminate period to fill the "rest of the box in," and then returned with a guilty verdict. At no point did the trial judge make any of the findings required to reject an announced verdict. Because this appears to be an obvious error by the trial court, and there is no proffered justification for trial counsel's silence, it would seem that trial counsel was objectively unreasonable in failing to object.

Nonetheless, petitioner cannot meet the exacting standard of AEDPA. The Appellate Division could have found that, viewing the record as a whole, petitioner suffered no prejudice from his trial counsel's failure to object. This is because petitioner was sentenced to *concurrent* fifteen year terms for manslaughter and criminal possession of a weapon. Thus, even if petitioner had been acquitted of weapons possession, it would not have shortened his prison term. This demonstrates that petitioner did not suffer substantial prejudice from his counsel's error. See Smith v. Goord, 412 F. Supp. 2d 248, 258 (W.D.N.Y. 2006). The Appellate Division could have concluded that petitioner suffered no prejudice because his conviction for criminal possession of a weapon did not at all increase his sentence. Under AEDPA, "fairminded jurists"

could disagree as to whether this conclusion would be correct, and thus the petition must be denied as to this claim.

I recognize that the Second Circuit's decision in <u>Jackson v. Leonardo</u>, 162 F.3d 81, 86 (2d Cir. 1998), suggests a contrary result. There, the Circuit expressly rejected the argument that a habeas petitioner could not show prejudice under <u>Strickland</u> where his counsel's failure to raise a double jeopardy issue caused the petitioner to serve no additional jail time because the sentences on multiple counts were imposed to run concurrently. The Circuit's reasoning was that if petitioner committed another crime, he might possibly face enhanced jail time in the future because he had the allegedly improper conviction on his criminal record (although the Circuit acknowledged that the two convictions would not be treated as separate under the State's then-extant sentencing scheme). Therefore, according to the Circuit, because the petitioner "may suffer tangible prejudice" from his counsel's error, he had satisfied the prejudice prong of <u>Strickland</u>. <u>Id.</u> at 86-87.

<u>Jackson</u> seems inconsistent with all other cases, including <u>Strickland</u> itself, that establish the standard of prejudice that a petitioner must show to warrant habeas corpus relief – that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>United States v. Alli-Balogun</u>, 72 F.3d 9, 11 (2d Cir. 1995) (per curiam) (citation omitted) (quoting <u>Strickland</u>, 466 U.S. at 688, 694, 104 S. Ct. 2052). Implicit in the <u>Jackson</u> Court's finding of prejudice are the assumptions that it is reasonably likely that the petitioner will commit another crime; that he will be caught, indicted, and convicted; and that when he is sentenced for this hypothetical crime, his sentence will be enhanced by the concurrent sentence under attack in the pending habeas petition (notwithstanding that a petitioner, by definition, will still be faced with an equally or more severe

conviction that is concurrent to the one under attack). That all seems awfully speculative (and, as to the first assumption, a bit cynical), not the "reasonable probability" that Strickland requires.[4]

Notwithstanding any analytical deficiencies in Jackson, I would be bound to apply it as controlling authority but for two additional factors. First, the Second Circuit in Jackson noted that "[b]ecause Jackson filed his habeas petition before the enactment of the AEDPA, the AEDPA amendments do not govern the disposition of his petition." Id. at 84 n.8. Therefore, the Circuit in Jackson undertook de novo review, rather than the deferential AEDPA review that applies here. This means that the issue before me is not whether petitioner was prejudiced or not; rather, the issue is whether the Appellate Division so unreasonably applied Strickland that no fairminded jurist could support its conclusion that petitioner had made an inadequate showing of prejudice.

Relatedly, Jackson is a Second Circuit case, and the strict AEDPA standard requires that I affirm state court decisions unless they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1); Rodriguez v. Miller, 537 F.3d 102, 106-07 (2d Cir. 2008) ("No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief."). District courts in this Circuit have held that a habeas writ cannot issue because a State court decision is contrary to or unreasonably applies Jackson, and I agree. See Rodriguez v. Smith, 485 F. Supp. 2d 368,

---

[4] Adding to the speculation, to receive an enhancement on a future sentence, the petitioner here would also have to suffer a change in New York or federal law (depending on where his hypothetical crime was charged) for prejudice to arise. At the time of Jackson, New York law would not enhance a sentence for a prior gun conviction running concurrently with a manslaughter conviction arising out of the same incident, see N.Y. Penal L. § 70.10, and that law has not changed. Similarly, the United States Sentencing Guidelines would add no extra criminal history points for petitioner's conviction since he was sentenced for both crimes at the same time and there was no intervening arrest. See U.S.S.G. § 4A1.2(a)(2). The Guidelines have never changed on this issue.

384 n.7 (S.D.N.Y. 2007); <u>Nelson v. Sears</u>, No. 05 Civ.10341, 2006 WL 775123, at \*14

(S.D.N.Y. March 28, 2006).  The petition is therefore denied as to the ineffective assistance of

trial counsel claim.

### III.    Other Claims of Error

Both the initial *pro se* petition and the subsequent brief by counsel plainly focus on

ineffective assistance of counsel.  However, I read the *pro se* petition to raise other claims of

error, namely that (1) the trial court deprived petitioner of a fair trial by sending the jury back in,

and perhaps subjected him to double jeopardy, and (2) that the trial court erred by improperly

submitting involuntary manslaughter to the jury as a lesser-included charge.[5]

### A.  Jury Verdict

To the extent that petitioner is arguing that the trial court erred with regard to the jury's

verdict, the federal basis for that claim is unclear.  In his brief before the Appellate Division on

direct appeal, petitioner principally advanced claims of error under New York law, arguing that

the trial court did not comply with Article 310 of the Criminal Procedure Law, which governs

jury verdicts, and cited to cases interpreting that statute.  Issues of the proper application of state

law are beyond the purview of this Court in a federal habeas proceeding.  <u>See</u> <u>Swarthout v.</u>

<u>Cooke</u>, ⎯⎯ U.S. ⎯⎯, ⎯⎯, 131 S. Ct. 859, 862-63 (2011) (per curiam) (holding that it is of no

federal concern whether state law was correctly applied).

However, it appears that the petition might be construed as raising the federal claim that,

by sending the jury back, the trial judge deprived petitioner of his "right to have the jury, rather

than the judge, reach the requisite finding of 'guilty.'"  <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 277,

---

[5] I must reject the State's contention that I should consider the instant petition to only raise claims for ineffective assistance of appellate and trial counsel, rather than allege any errors by the trial court or the Appellate Division.  "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*."  <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations omitted).

113 S. Ct. 2078 (1993).  It might also be construed as raising the claim that petitioner was subjected to double jeopardy when the jurors were sent to "reconsider" their verdict of not guilty on the weapons count.

As noted, petitioner principally relied upon New York state law before the Appellate Division.  But petitioner did argue that "[t]he court's rejection of the earlier verdict sent the unmistakable message to the jurors that they had gotten it 'wrong.'  Appellant, therefore, was deprived of his due process right to a fair trial."  In making this argument, petitioner cited the 14th Amendment of the U.S. Constitution in his headings for Point II, and cited United States v. Martin Linen Supply Co., 430 U.S. 564, 573 (1977), for the proposition that "[t]he trial judge is . . . barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused."  There is also a fleeting reference to double jeopardy, in a parenthetical following a citation to a state court case, and several of the state court decisions cited in the brief addressed double jeopardy claims.

Although petitioner did not place much emphasis on these federal claims, his appellate brief did inform the state court of the "essential factual allegations" and "essentially the same legal doctrine" that he arguably asserts in this petition.  See Strogov v. Attorney Gen. of the State of New York, 191 F.3d 188, 191 (2d Cir. 1999).  Therefore, I hold that these claims exhausted. See Lau v. Goord, 540 F. Supp. 2d 399, 404-05 (E.D.N.Y. 2008) (holding federal claim exhausted where petitioner cited federal case law prohibiting directed verdicts in criminal cases and argued that trial judge "essentially direct[ed] a guilty verdict" by failing to follow procedures in Article 310).

However, petitioner's claims that the trial court erred with regard to the jury's verdict are procedurally barred.  It is undisputed that trial counsel did not object when the jury was sent back

after announcing a "not guilty" verdict as to the weapons charge. After ruling on petitioner's claim relating to the first-degree manslaughter charge – which I will address below – the Appellate Division ruled that petitioner's "remaining contention is not preserved for appellate review and, in any event, is without merit." Tavarez, 70 A.D.3d at 733. Although the Appellate Division did not specifically identify the "contention" to which it was referring, petitioner's appellate brief raised two main points: that submitting the first-degree manslaughter charge to the jury was error, and that the trial court deprived petitioner of a fair trial by sending the jury back without explanation. Having already disposed of the first contention, the Appellate Division could only have been referring to the second.

"A statement that a petitioner's claim was 'unpreserved' is sufficient to establish that [the Appellate Division] was relying on a procedural bar as an independent ground in disposing of the issue." Boyd v. Griffin, No. 11–CV–324, 2014 WL 1797477, at *9 (E.D.N.Y. May 7, 2014). That the Appellate Division also found the claim to be without merit does not change this conclusion. See, e.g., Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."). The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule," Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011), and there is no indication that applying the rule in this case fits into the narrow category of exorbitant misapplications of state law serving no legitimate interest. See Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877 (2002).

A procedural default may be excused if the petitioner can show cause and prejudice.[6] Ineffective assistance of counsel may constitute cause, but the petitioner must raise that

---

[6] A procedural default may also be excused in the case of a fundamental miscarriage of justice, which would require petitioner to show "that he is actually innocent of the crime for which he has been convicted." See Dunham v.

ineffective assistance as a separate and meritorious constitutional claim. See Edwards v. Carpenter, 529 U.S. 446, 450-51, 120 S. Ct. 1587 (2001). Petitioner properly raised a claim for ineffective assistance of trial counsel both here and on his direct appeal. However, the Appellate Division rejected this claim on the merits. I concluded above that this determination was not unreasonable. Therefore, because petitioner cannot show that he has a meritorious claim for ineffective assistance of counsel, he also cannot show cause to excuse the procedural bar as to his direct claim of error.

There is a split between the Circuits as to whether, when a state court has decided an ineffective assistance claim on direct appeal, that decision is entitled to AEDPA deference in the cause-and-prejudice context. See Richardson v. Lemke, 745 F.3d 258, 272-73 (7th Cir. 2014) (describing split). The Seventh Circuit has explicitly held that AEDPA deference applies to cause-and-prejudice, see id., and the Tenth Circuit has implicitly agreed with this approach in an unreported decision. See Roberson v. Rudek, 446 F. App'x. 107, 109 (10th Cir. 2011). The Third and Sixth Circuits, meanwhile, have applied a de novo analysis. See Hall v. Vasbinder, 563 F.3d 222, 236-37 (6th Cir. 2009); Fischetti v. Johnson, 384 F.3d 140, 154-55 (3d Cir. 2004).

The Second Circuit was recently confronted with this question and declined to rule on it, suggesting that it remains an open question in this Circuit. See Bramble v. Griffin, 543 F. App'x. 1, 4 n.1 (2d Cir. 2013). However, I believe that the Seventh Circuit's approach is correct. A federal habeas court cannot consider ineffective assistance as constituting cause and prejudice unless that ineffective assistance claim has been exhausted in state court. See Edwards v. Carpenter, 529 U.S. 446, 447, 120 S.Ct. 1587, 1589 (2000). And if it has been exhausted in state court, there seems no more basis for reviewing it de novo than there would be for any other

Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321, 115 S. Ct. 851 (1995)). Petitioner could not and does not make such a claim here.

exhausted claim. This is especially apparent in this case, where in ruling that petitioner's jury

claims were procedurally barred, the Appellate Division necessarily rejected the argument that

counsel was ineffective for failing to object.

### B. Improper Lesser Included Charge

Petitioner's other possible claim of error – that the trial court erred by charging an

improper lesser-included offense – does not state a claim for federal habeas relief. Although the

"United States Supreme Court [has] found that in capital cases, due process requires a trial court

to instruct a jury on lesser-included offenses, if the evidence warrants such a charge," in non-

capital cases, a trial court's refusal to instruct the jury on first-degree manslaughter as a lesser-

included offense of murder "cannot form the basis for habeas relief." Bien v. Smith, 546 F.

Supp. 2d 26, 42-43 (E.D.N.Y. 2008); see also Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996)

(holding that "[s]ince a decision interpreting the Constitution to require the submission of

instructions on lesser-included offenses in non-capital cases would involve the announcement of

a new rule," the court was precluded from considering the issue in a habeas petition) (citing

Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989)).

Similarly, "[t]he Supreme Court has not ruled upon whether it is a violation of the

Constitution or federal law for a trial court to instruct the jury on a lesser-included offense, in a

non-capital case, if such an instruction is improper." Nesmith v. Bradt, No. 08 Civ. 6546, 2009

WL 3189346, at *3 (S.D.N.Y. Oct. 5, 2009). Granting habeas relief on this claim would thus

involve announcing a new rule, which would be improper for the reasons set forth in Jones, 86

F.3d at 48.

## CONCLUSION

The petition for a writ of habeas corpus is denied, and the case is dismissed. *In forma pauperis* status is granted for purposes of appeal.

A certificate of appealability shall issue as to two specific questions: (1) whether a State court decision denying an ineffective assistance of counsel claim can be contrary to, or an unreasonable application of the prejudice requirement in <u>Strickland</u>, where the petitioner received concurrent sentences, only one of which is the subject of the ineffective assistance claim; and (2) whether, when a State court has held that a claim is procedurally barred, and that the bar will not be excused by ineffective assistance of counsel, a federal habeas court should apply AEDPA deference in considering whether that ineffective assistance of counsel claim can serve as cause and prejudice for excusing the procedural default. <u>See</u> 28 U.S.C. § 2253(c).

The Clerk is directed to enter judgment.

**SO ORDERED.**

_____
                                                U.S.D.J.

Dated: Brooklyn, New York
         May 18, 2014